UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-cv-00616-FDW-DSC

| | |
|---|---|
| ERICA CUTHBERTSON, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| | ) ORDER |
| FIRST STAR LOGISTICS, LLC, | )<br>) |
| Defendant. | )<br>)<br>) |

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment, (Doc. No. 11). The parties have fully briefed this motion, and it is ripe for ruling. (Docs. Nos. 11, 12, 13, 14, 18, 19). For the reasons that follow, the Court GRANTS Defendant's Motion to Amend the Summary Judgment Record, (Doc. No. 18); GRANTS Defendant's Motion for Summary Judgment, (Doc. No. 11), and DENIES AS MOOT Defendant's Motion to Continue Trial, (Doc. No. 20).

## I. BACKGROUND

Plaintiff Erica Cuthbertson filed this action against her former employer Defendant First Star Logistics, LLC, asserting claims arising out of the termination of her employment. Defendant provides third-party transportation logistics services and initially engaged Plaintiff, an African-American/black female, as an independent contractor in August 2018. In November 2018, Defendant hired her as am employee in the Recruiter role, where she recruited agents, also referred to as "terminals," for Defendant's trucking division. Defendant paid Plaintiff a base salary of $70,000 plus bonuses and commissions based on the profitability of agents she recruited.

1

In addition to Plaintiff, Defendant employed two other Recruiters: 1) Rodney Lawrence, an African-American/black male, who was hired in 2014; and 2) Jamie Reynolds, a white male hired in 2012. Defendant paid Reynolds a salary of $39,780 a year and Lawrence a salary of $80,000 a year. Reynolds and Lawrence also earned commissions based on profitability of agents.

The parties disagree as to the terms of the commissions for Recruiters, and Defendant concedes it did not have a written commission plan. Defendant's evidence, including Plaintiff's deposition testimony, tends to show a Recruiter was entitled to a commission if the Recruiter recruited an agent who stayed for at least 45 days; completed certain safety and other paperwork; generated invoices; and was profitable for First Star. Defendant has provided evidence to support its commission allocation and calculations. Plaintiff contends Defendant applied its commission policy differently to her than her fellow Recruiters by failing to pay her certain commissions owed and improperly withholding certain commissions owed to her.

In March 2020, Defendant eliminated one of the three Recruiter positions and terminated Plaintiff's employment. Defendant asserts this decision resulted from its response to the COVID-19 pandemic and its impact on business, and Defendant contends it selected Plaintiff for layoff because she was the Recruiter with the least seniority and profitability. Defendant has not replaced the Recruiter position previously held by Plaintiff.

Plaintiff filed the instant action alleging: 1) "Unlawful Hostile Work Environment on the Basis of Sex and Race" in violation of Title VII; 2) "Unlawful Hostile Work Environment on the Basis of Race" in violation of 42 U.S.C. § 1981; 3) "Unlawful Discrimination and Retaliation on the Basis of Sex and Race" in violation of Title VII; 4) "Unlawful Discrimination and Retaliation on the Basis of Sex and Race in violation of 42 U.S.C. § 1981; and 5) violation of the Equal Pay

2

Act.  In short, Plaintiff contends she was the only Recruiter who did not receive commission payments for profitable agents recruited, not offered 401(k) benefits, did not receive support she needed for her and her clients to succeed, had profitable agents taken away from her, and was unlawfully terminated after complaining of discriminatory treatment and not receiving commissions and bonuses.  In addition, Plaintiff also contends a manager called her an "angry black woman," and she reported this comment to her supervisor, as well as her co-worker Rodney Lawrence, in January 2020 but Defendant did nothing in response.  Defendant has moved for summary judgment on all claims.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).  Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The

3

nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Evidence produced for or against a summary judgment motion must be admissible at trial, but it does not need to be produced in an admissible form. Celotex, 477 U.S. at 323-24.

A party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. See Deans v. CSX Transp., Inc., 152 F.3d 326, 330-31 (4th Cir. 1998). And, the mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. See Liberty Lobby, 477 U.S. at 252. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. ANALYSIS

For purposes of analysis here and in light of corresponding applicable law, the Court considers whether Defendant is entitled to summary judgment on Plaintiff's grouped claims: (1) discrimination based on race and sex and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq. ("Title VII") and under 42 U.S.C. § 1981; (2) hostile work

environment under Title VII and Section 1981; (3) violation of the Equal Pay Act. The Court addresses these in turn.

A.  Discrimination and Retaliation in Violation of Title VII and § 1981

Here, the bulk of Plaintiff's claims assert causes of action for discrimination based on race and sex and retaliation under both 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. In evaluating Defendant's motion for summary judgment under both § 1981 and Title VII, the Court applies the McDonnell Douglas burden-shifting framework. Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). "The framework applies in employment discrimination and retaliation cases where a plaintiff does not present sufficient direct or circumstantial evidence showing that an adverse employment action was motivated by intentional discrimination aimed at the plaintiff's protected characteristics." Guessous, 828 F.3d at 216 (citing Foster v. Univ. of Md.–E. Shore, 787 F.3d 243, 250 (4th Cir. 2015)).

> The McDonnell Douglas framework is comprised of three steps: (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory. For status-based discrimination claims, the employee must show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision. Retaliation claims, by contrast, require the employee to show that retaliation was a but-for cause of a challenged adverse employment action. The Supreme Court has recently reiterated that a cause need not work in isolation to be a but-for cause. Burrage v. United States, 571 U.S. 204, 211 (2014) ("Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived."). As the district court noted, the plaintiff's burden to show pretext merges with the plaintiff's

5

> ultimate burden of persuading the court that she was a victim of intentional discrimination.

Guessous, 828 F.3d at 216–17 (cleaned up).

> To establish a prima facie case of retaliation under either statute, the plaintiff must show (i) that she engaged in protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment activity.

Id. at 217 (cleaned up).

> In a typical discriminatory discharge case, the plaintiff establishes a prima facie case by showing (1) that she is a member of a protected class; (2) that she suffered from an adverse employment action; (3) that she was performing at a level that met her employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class. As we have explained, however, the prima facie requirements are not set in stone, and differing factual circumstances may require adaptation.

Id. at 219 (cleaned up). In Guesseous, the Fourth Circuit explained that an adaptation of the prima facie case for discriminatory termination is required in cases more akin to a to a reduction-in-force case, where unnecessary positions are eliminated, as opposed to a typical discharge case. Id. In that case, the court adapted the final prima facie requirement such that the plaintiff was required to show that "her job duties were absorbed by employees not in the protected class or otherwise show that [the defendant employer] did not treat [the plaintiff's] protected characteristics neutrally when deciding to terminate her." Id.

Plaintiff asserts without argument or citation to any applicable law that "Plaintiff being told not to be an 'angry black woman' after she was asking for assistance and training for weeks serves as direct evidence of discrimination." (Doc. No. 13, p. 6). Without any argument or authority, the Court disagrees as to Plaintiff's characterization of this statement by someone who was neither a

6

supervisor nor a decision maker as "direct evidence" and instead finds it, when construed with her other evidence, more probative as circumstantial evidence.

In her affidavit attached to her opposition brief, Plaintiff indicates this incident occurred in January 2020 and that she promptly sought to report it to her manager, who never responded to her, and also to her supervisor/co-worker Rodney Lawrence.[1]  Plaintiff filed her complaint with the EEOC in January 2020.  Defendant eliminated Plaintiff's position in March 2020.

Defendant argues this evidence of a stray remark by a non-decisionmaker—provided for the first time attached to her opposition brief—directly contradicts her deposition testimony where she was repeatedly asked to identify all forms of discrimination and denied anyone making a discriminatory comment to her.  Putting aside any credibility determinations and construing the evidence in the light most favorable to Plaintiff, the Court presumes for purposes of the instant motion that her affidavit supplements her previous sworn testimony.  See Zimmerman v. Novartis Pharms. Corp., 287 F.R.D. 357, 362 (D. Md. 2012) ("Under the sham affidavit doctrine, 'a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.' Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999). Application of the sham affidavit rule at the summary judgment stage must be carefully limited to situations involving flat contradictions of material fact." (quotation omitted)).  Defendant's arguments lend more to weighing the *credibility* of Plaintiff's affidavit as opposed to a flat contradiction of previous testimony.  Accordingly, for purposes of summary judgment, the Court

---

[1] Plaintiff contends Lawrence was "another agent recruiter but also her direct supervisor for reporting purposes." (Doc. No. 13, p. 15).

will consider the new testimony in her affidavit regarding the manager's comment and Plaintiff's efforts to report that comment.[2]

Under this record, the Court liberally construes this testimony as providing minimally sufficient circumstantial evidence to make prima facie showing of race and sex discrimination. Affording this same liberal construction to her affidavit, the Court finds the proximity in time for which she contends she reported this to her manager and co-worker, filed her EEOC claim, and was informed she was furloughed and subsequently terminated also provides minimally sufficient circumstantial evidence to make a prima facie showing for her retaliation claim.

Shifting now to Defendant's burden, the Court concludes Defendant has demonstrated a legitimate, nondiscriminatory reason for Plaintiff's termination. The undisputed evidence shows Defendant decided to eliminated Plaintiff's position as a result of the impact of the COVID-19 pandemic and chose Plaintiff for termination based on her lack of seniority and profitability. See Marshall v. AT&T Mobility Servs., LLC, No. 3:17-CV-1577-CMC, 2019 WL 1274723, at *4 (D.S.C. Mar. 20, 2019) ("[I]t is within the employer's purview, in implementing a [reduction in force], to analyze its employees' performance and determine, without utilizing any protected characteristic, who must be terminated."), aff'd, 811 F. App'x 849 (4th Cir. 2020) (unpublished); see also Rowe v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000) ("The decision to discharge [the plaintiff] and retain [others] is the kind of business decision that we are reluctant to second-guess."); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960–61 (4th Cir. 1996) ("When assessing job performance, it is the perception of the decision maker which is relevant, not the

---

[2] Notably, Plaintiff's affidavit is unclear whether she actually reported the comment to her supervisor, and her testimony indicates, "When I *tried* to report issues to Kevin, he would not respond to me." (Doc. No. 13-1, p. 5 (Emphasis added)).

self-assessment of the plaintiff."). Indeed, Plaintiff has produced no evidence to contradict Defendant's evidence, and her conclusory, self-serving statements that the pandemic did not impact the trucking industry are insufficient to create a genuine issue of disputed fact. See Dugan v. Albemarle Cnty. Sch. Bd., 293 F.3d 716, 722 (4th Cir. 2002) (assuming the plaintiff can establish a prima facie case of discrimination and noting "the remaining question is whether [the plaintiff] presents evidence to discredit [her employer's] proffered nondiscriminatory reason and, if so, whether it leads to the inference that a likely alternative explanation is purposeful discrimination."). Absent any evidence disputing Defendant's position in the face of the COVID-19 pandemic or evidence disputing Plaintiff's lack of seniority or profitability, Plaintiff has failed to raise any genuine issue of material fact as to whether the otherwise legitimate, nondiscriminatory reasons offered by Defendant are pretextual.

And, because Plaintiff has failed to dispute Defendant's legitimate, nondiscriminatory reasons, she has failed to establish that Defendant's reasons are a pretext for any alleged discriminatory motive. Again, even viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude that the legitimate, nondiscriminatory reasons presented by Defendant are pretextual under this record. As such, no genuine issue of material fact exists with respect to the issue of pretext. In other words, Plaintiff has failed to present any evidence that her sex or race motivated Defendant's decision to eliminate her position and terminate her employment, and no evidence suggests that Plaintiff's reporting of the manager's comment to her employer or to the EEOC was the but-for cause of Defendant's termination.

As to Plaintiff's other grounds asserted in support of her discrimination and retaliation claims, the Court summarily rules that Defendant is also entitled to summary judgment for the

reasons stated in Defendant's briefing to this Court. In short, Plaintiff has failed to make a prima facie showing that Defendant discriminated against her because of her race or sex in its decisions regarding health insurance, 401(k) benefits, client allocation, employee training/support, and commission/bonus payments not properly allocated to her based on a "partnership" arrangement she had with a coworker. Plaintiff failed to show any of these decisions made by Defendant constitute an adverse action because Plaintiff has failed to present sufficient evidence to show she was treated differently than similarly situated employees. Instead, she relies on hearsay and speculative, conclusory statements in her affidavit, which are insufficient at this stage to demonstrate a genuine issue of material fact as to whether Defendant treated Plaintiff less favorably based on her race or sex.

Moreover, Plaintiff has failed to forecast any evidence to show a causal connection between these decisions and her race and sex or that Defendant did not treat her protected characteristics neutrally when making these decisions. As to her retaliation claims, Plaintiff provides neither evidence nor applicable authority to suggest her complaints to her employer about its decisions in these areas constitute protected activity, and—even assuming she her complaints rose to the level of protected activity—*no* evidence in this record suggests a causal connection between that protected activity and Defendant's decision to terminate her. No reasonable jury could find for Plaintiff on her discrimination and retaliation claims under this evidentiary record. Without a prima facie showing of discrimination or retaliation based on Defendant's decisions regarding health insurance, 401(k) benefits, client allocation, employee training/support, and allocation of commission/bonus payments, her race and sex and retaliation claims cannot survive summary judgment. And, as noted above, even if Plaintiff could make a prima facie showing of

10

discrimination based on sex or race or retaliation based on the employment decisions challenged here, Plaintiff has failed to provide any evidence to raise any genuine issue of material fact as to whether the otherwise legitimate, nondiscriminatory reasons offered by Defendant are pretextual.

Defendant is entitled to summary judgment on Plaintiff's discrimination and retaliation claims under Title VII and Section 1981.

B.  Hostile Work Environment in Violation of Title VII and 42 U.S.C. § 1981

Defendant also moves for summary judgment on Plaintiff's claims for a hostile work environment and argues these claims fail as a matter of law. "The elements [of a hostile work environment claim] are the same under either § 1981 or Title VII." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-84 (4th Cir. 2001). "To state a hostile work environment claim, Plaintiff must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764 (4th Cir. 2003) (cleaned up); see also Jordan v. Alternative Resources Corp., 458 F.3d 332, 339 (4th Cir. 2006).

> The "severe or pervasive" element of a hostile work environment claim has both subjective and objective components. First, the plaintiff must show that [s]he subjectively perceived the environment to be abusive. Next, the plaintiff must demonstrate that the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive.

EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (internal quotations and citations omitted). Recently, the Fourth Circuit explained the inquiry relevant to Plaintiff's claims here;

> When racial animus in the workplace creates a hostile work environment, requiring an affected employee to work in it amounts to intentional racial discrimination by the employer and is actionable under Title VII. See Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 276–77 (4th Cir. 2015) (en banc) (citing 42 U.S.C. § 2000e-

11

2(a)(1)). To succeed on a hostile-work-environment claim "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's ... race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Id. at 277 (alteration in original) (quoting Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011)). A hostile-work-environment claim will only succeed when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Unlike a typical claim of intentional discrimination based on a discrete act, a hostile-work-environment claim's "very nature involves repeated conduct." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).

The severe or pervasive conduct which gives rise to an abusive work environment must be both objectively and subjectively "hostile" and "abusive." Harris, 510 U.S. at 21–22 (requiring the plaintiff to prove "the environment would reasonably be perceived, and is perceived, as hostile or abusive"). Objective analysis of whether a workplace is hostile and abusive looks to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Boyer-Liberto, 786 F.3d at 277. But the ultimate inquiry is whether the conduct is so "extreme" that it "amount[s] to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Even conduct that would objectively cause hurt feelings or offense is not enough to be severe or pervasive. EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008).

The inquiry into objectively severe or pervasive abusive conduct must focus on the events that the plaintiff personally experienced. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190 (4th Cir. 2004). "[E]xperiences of third parties about which the plaintiff was unaware should not be considered in evaluating a hostile work environment's severe or pervasive requirement." Perkins v. Int'l Paper Co., 936 F.3d 196, 210 (4th Cir. 2019). But conduct directed at others is relevant if the plaintiff knew of the conduct. Sunbelt Rentals, 521 F.3d at 317. The status of the harasser is also a "significant factor" to be considered; harassment by a supervisor tends to be more serious, while harassment by a co-equal is less serious. Boyer-Liberto, 786 F.3d at 278. After all, "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Id. (quoting Burlington Indus. v. Ellerth, 524 U.S. 742, 763, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

McIver v. Bridgestone Americas, Inc., 42 F.4th 398, 407–08 (4th Cir. 2022).

Here, Plaintiff contends she experienced unwelcome harassment based on her race or sex in four instances: 1) when "her clients were taken away from her and she was yelled at and told 'U ARE NOT DEMANDING ANYTING' [sic] when requesting a commission;" 2) "she was constantly ignored when asking for basic assistance;" 3) "she was not trained to use the new computer system even though Lawrence and Reynolds were trained;" and 4) "she was not to 'not be the angry black woman' by upper management . . . ." (Doc. No. 13, p. 16). Notably, Plaintiff fails to direct the Court to any evidence to suggest the first three instances alleged misconduct had anything to do with her race or sex. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000) (noting that a "showing of a difference of opinion, coupled with [the plaintiff's] conclusory allegations of racism, cannot reasonably support the conclusion that [the plaintiff's] discharge was motivated by racial animus."). The totality of these allegations, and the evidence put forward to support them, fails to create a genuine question of material fact that sex or racial discrimination was so severe or pervasive that it constituted a hostile work environment for Plaintiff. See Faragher, 524 U.S. at 788.

Turning to the fourth instance of misconduct and the manager's statement, Plaintiff has failed to provide any legal authority to indicate this statement rises to the level of "severe or pervasive" to support a hostile work environment claim. While the statement is reprehensible, the one-time and isolated comment fails to demonstrate Plaintiff's "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of [her] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted) (Title VII); see also Boyer-Liberto, 786 F.3d at 277 (Section 1981). In so concluding, the Court has considered

13

the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with Plaintiff's work performance. Harris, 510 U.S. at at 23; Perkins v. Int'l Paper Co., 936 F.3d 196, 208 (4th Cir. 2019) (quoting E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008)). Because Plaintiff cannot show that the conduct complained of was sufficiently severe or pervasive to create a hostile work environment, Defendant is entitled to summary judgment.

C.     Violation of the Equal Pay Act

Finally, Defendant moves for summary judgment on Plaintiff's claims for pay discrimination under Title VII and the Equal Pay Act, arguing these claims fail as a matter of law because she cannot prove that similarly situated employees outside her protected class received more favorable treatment.

> "The EPA prohibits gender-based discrimination by employers resulting in unequal pay for equal work." EEOC v. Md. Ins. Admin., 879 F.3d 114, 120 (4th Cir. 2018). To establish a prima facie case under the EPA, a plaintiff must demonstrate: (1) the employer paid different wages to an employee of the opposite sex, (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions. Id. Generally, it is not enough to simply show that the comparators hold the same title and the same general responsibility as the plaintiff. See Spencer v. Virginia State Univ., 919 F.3d 199, 204 (4th Cir. 2019); Wheatley v. Wicomico Cty., Maryland, 390 F.3d 328, 332–33 (4th Cir. 2004). They must have virtually identical jobs. Wheatley, 390 F.3d at 333.

Evans v. Int'l Paper Co., 936 F.3d 183, 196 (4th Cir. 2019). "Once a plaintiff establishes a prima facie case of discrimination under the EPA, the burdens of production and persuasion shift to the defendant-employer to show that the wage differential was justified by one of the statutory defenses." Id. at 196 n. 6. These statutory defenses include: "(i) a seniority system; (ii) a merit

14

system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

Here, Plaintiff identifies both Lawrence and Reynolds as comparators as these two males held the same role as her—agent recruiter. Plaintiff contends their work required equal skill, effort and responsibility as her, and she asserts all three performed their work under the same working conditions. Plaintiff's only trial quality evidence to support her claim indicates that Defendant paid Lawrence a salary of approximately $10,000 more than Plaintiff and paid Reynolds a salary of approximately $30,000 *less* than Plaintiff. Plaintiff's reliance on the salary difference and the fact that these comparators held her same job title does not satisfy the requisite prima facie showing. The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high. "Equality under the Act is a demanding threshold requirement. It requires a comparator to have performed work 'virtually identical' (or the apparent synonym, 'substantially equal') to the plaintiff's in skill, effort, and responsibility. . . .[W]e have rejected an analogous claim that jobs with the same title and only vaguely corresponding responsibilities can be considered equal." Spencer v. Virginia State Univ., 919 F.3d 199, 203–04 (4th Cir. 2019), as amended (Mar. 26, 2019) (quoting Wheatley v. Wicomico Cnty., 390 F.3d 328, 333 (4th Cir. 2004)). In making this determination, "job descriptions and titles are not decisive. Rather, actual job performance and requirements are controlling." Brennan v. Prince William Hosp. Corp., 503 F.2d 282, 288 (4th Cir. 1974).

Here, Plaintiff's choice of Reynolds as a comparator fails to establish the first element of her initial showing—the existence of a wage differential, particularly where the undisputed evidence indicates *her* salary was significantly higher than his. Her choice of Lawrence, however,

15

satisfies this showing; although choosing Lawrence as a comparator precludes her from establishing, as the second element requires, that she and Lawrence performed "equal" work requiring "equal skill, effort, and responsibility," particularly where her own testimony and other evidence indicates Lawrence had been working for Defendant longer than her and had supervisor responsibilities over Plaintiff. (See, e.g., Doc. No. 13, p. 15 (acknowledging Lawrence was "another agent recruiter but also her direct supervisor for reporting purposes;" Doc. No. 13-1, pp. 2, 5 (noting that management told her to "direct issues to Rodney [Lawrence];" and noting she reported the inappropriate comment by management to Rodney Lawrence when her supervisor did not respond)).

Additionally, Plaintiff's speculation and generalizations about Defendant's commission policies fail to create a genuine issue of material fact to the "different wages" paid by Defendant. Plaintiff conclusively contends that Defendant withheld certain commissions she was owed while paying other Agent Recruiters and failed to split commissions she contends she earned in a partnership with Lawrence. Notably, Plaintiff concedes commissions were determined based on the profitability of agents recruited, and she has not presented any evidence to contradict Defendant's commission calculations based on quality of work recruiting profitable agents. Plaintiff's generalized statements that Defendant did not evaluate Lawrence's and Reynold's commissions similarly are insufficient to create an issue of fact as to a pay disparity. Plaintiff has simply failed to present any evidence to support these statements.

Instead, Defendant's unrebutted evidence demonstrates that any difference in commission payments for Plaintiff and her male counterparts was due to individual performance based on both quantity and quality of those recruited. (See, e.g, Doc. No. 11-3, pp. 5-6 (citing Exhibits 1, 3)).

16

Because the Equal Pay Act permits employers to set wages according to the quantity and quality of employees' production and seniority, and no genuine issue of material fact exists as to whether these two exceptions should apply here, the Court holds that Plaintiff's Equal Pay Act claim fails and Defendant's Motion for Summary Judgment on this claim must be granted.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the Court GRANTS Defendant's Motion to Amend the Summary Judgment Record, (Doc. No. 18); GRANTS Defendant's Motion for Summary Judgment, (Doc. No. 11), and DENIES AS MOOT Defendant's Motion to Continue Trial, (Doc. No. 20). The Clerk is respectfully directed to terminate all pending deadlines, including trial, and close the case.

IT IS SO ORDERED.

Signed: November 1, 2022

Frank D. Whitney
United States District Judge